IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RYAN CASTANEIRA,<br>     **Plaintiff**<br><br>   v.<br><br>MICHAEL POTTEIGER,<br>     **Defendant** | No. 3:13cv3108<br><br>(Judge Munley) |

## MEMORANDUM

Before the court for disposition is Defendant Michael Potteiger's (hereinafter "defendant") motion for judgment on the pleadings. (Doc. 41). Defendant, Chairman of Pennsylvania's Board of Probation and Parole, contends that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law regarding Plaintiff Ryan Castaneira's (hereinafter "plaintiff") *pro se* civil rights complaint. The motion is fully briefed and ripe for disposition.

**Background**

On September 20, 2006, plaintiff was arrested in Georgia for on-line solicitation and charged with: (1) criminal attempt-child molestation; (2) criminal attempt-enticing child for indecent purposes; (3) computer pornography & child exploitation and (4) obscene internet contact.[1] (Doc.

---

[1] Plaintiff's criminal docket is located at: http://www.fayetteclerkofcourt.com/ (last accessed Sept. 22, 2014).

6, Compl. (hereinafter "Compl." ¶ 30).  After a trial, plaintiff was convicted on all four sex offenses and sentenced to ten (10) years of incarceration and twenty (20) years of probation.  (Id. ¶ 35).

In February 2013, Georgia granted plaintiff parole and imposed a special condition of supervision prohibiting him from residing within 1,000 feet of a church, school, child care facility or areas where minors congregate.  (Id. ¶¶ 38, 40, 69; Doc. 40, Ex. J, Ga. Condition of Supervision at 5).  On April 10, 2013, plaintiff completed an application to transfer his parole supervision from Georgia to Pennsylvania pursuant to the Interstate Compact for Adult Offender Supervision (hereinafter the "Interstate Compact").  (Id. ¶ 40).  Plaintiff's application acknowledged that he agreed to Georgia's 1,000 foot residence restriction as a condition of his parole.  (Id.)

Initially, plaintiff requested to reside at 631 Benton Street, Harrisburg, Pennsylvania.  (Id. ¶ 44).  On June 24, 2013, the defendant denied plaintiff's transfer request because the residence was within 1,000 feet of a child care facility, school, church or other place where minors congregate.  (Id. ¶ 61).  On July 24, 2013, plaintiff submitted a second application to reside at 46 South 35th Street, Camp Hill, Pennsylvania.  (Id. ¶ 71).  Defendant denied plaintiff's second application soon thereafter

2

because the proposed residence was within 500 feet of a church and school.  Currently pending is plaintiff's third request to transfer his probation from Georgia to 1918 Mulberry Street in Harrisburg, Pennsylvania.[2]  (Doc. 54, Pl.'s Aff. in Opp'n to Def.'s Mot. for J. on the Pleadings ¶¶ 20-32 ).

In response to the defendant's denials of his transfer requests, plaintiff filed a civil rights complaint with the United States District Court for the Eastern District of Pennsylvania.  (Doc. 6).  On November 25, 2013, the Eastern District ordered this case transferred to the Middle District of Pennsylvania.  (Doc. 16).  The defendant filed a motion for judgment on the pleadings on June 26, 2014 (Doc. 41), and the parties briefed the issues bringing the case to its present posture.

**Jurisdiction**

Plaintiff brings this case under 42 U.S.C. § 1983 (hereinafter "section 1983") for violation of his constitutional rights.  Thus, the court has federal question jurisdiction.  See U.S.C. § 1331.  ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); 28 U.S.C. §§

---

[2]  The court stayed defendant's determination of plaintiff's third request to transfer his probation pending resolution of the instant motion for judgment on the pleadings.  (Doc. 50).

1343(a)(3), (4) (granting district courts jurisdiction over civil actions brought to redress deprivations of constitutional or statutory rights by way of damages or equitable relief).

**Legal Standard**

Defendant filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), which provides that "[a]fter the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). Under Rule 12(c), judgment should be granted where:

> the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law. In considering a motion for judgment on the pleadings, the trial court is required to view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. In this fashion the courts hope to insure that the rights of the nonmoving party are decided as fully and fairly on a rule 12(c) motion, as if there had been a trial.

Inst. for Scientific Info., Inc. v. Gordon & Breach Sci. Publishers, Inc., 931 F.2d 1002, 1004 (3d Cir. 1991) (citing Society Hill Civic Ass'n v. Harris, 632 F.2d 1045, 1054 (3d Cir. 1980); 5C CHARLES A. WRIGHT & ARTHUR R. MILLER, FED. PRACTICE AND PROCEDURE, § 1367 at 205 (3d ed. 2004)); see also Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005) (finding that under Rule 12(c) "[j]udgment will not be granted unless the

movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law.").

**Discussion**

Initially, the court notes that plaintiff brings his civil rights claims pursuant to section 1983, which does not, by its own terms, create substantive rights. Rather, it provides remedies for deprivations of rights established elsewhere in the Constitution or federal law. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). Section 1983 states in pertinent part:

> Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State or territory or the District of Columbia, subjects, or causes to be subjected, any citizens of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Thus, to establish a claim under section 1983, two criteria must be met. First, a person acting under color of state law must have committed the underlying conduct. Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d 582, 590 (3d Cir. 1998). Second, the conduct must deprive the plaintiff of rights secured under the Constitution or federal law. Id. Here, the parties do not contest the defendant was acting under state law. Rather, the parties disagree as to whether the defendant

deprived plaintiff of his rights secured under the Constitution or federal law.

The defendant challenges plaintiff's federal and constitutional claims on two grounds. First, defendant argues that the United States Congress did not create an enforceable federal right for probationers and parolees under the Interstate Compact. Because probationers and parolees do not have an enforceable right, they cannot bring a section 1983 action. Second, plaintiff's Fourteenth Amendment Due Process and Equal Protection claims fail as a matter of law. We address defendant's arguments *in seriatim*.

### A. The Interstate Compact[3]

Defendant asserts that the Interstate Compact does not create an enforceable federal right for probationers and parolees. The Interstate Compact regulates the "control of the interstate movement of offenders in the community . . . ." 61 Pa. Cons. Stat. Ann. § 7112; Ga. Code Ann. § 42-9-81. It provides offenders the opportunity to transfer their probation or parole supervision to the community where they have family, confirmed employment, specialized treatment programs, and/or educational or

---

[3] Pennsylvania and Georgia have adopted the Interstate Compact. See 61 Pa. Cons. Stat. Ann. §§ 7111-7114; Ga. Code Ann. §§ 42-9-80 - 42-9-82.

vocational opportunities. 61 PA. CONS. STAT. ANN. § 7112; GA. CODE ANN. § 42-9-81.

The Third Circuit Court of Appeals, however, has determined that the Interstate Compact manifests no Congressional intent to create a federal right or remedy for probationers and parolees. Doe v. Pa. Bd. of Probation & Parole, 513 F.3d 95, 103-05 (3d Cir. 2008). In Doe, the Pennsylvania Board of Parole denied Doe's application to transfer his probation from New Jersey to Pennsylvania. Id. at 99. Doe filed an action under section 1983 alleging that the Pennsylvania Board of Parole and its Board Chairman violated his Fourteenth Amendment Due Process and Equal Protection rights. Id. at 100. The Third Circuit Court of Appeals discussed whether Doe could bring a claim under section 1983 to enforce provisions of the Interstate Compact:

> Because the Compact does not manifest either expressly or indirectly an intent to create a federal right or remedy, we hold that the Compact itself does not create an enforceable right. The language of the Compact itself creates rights for the various states who are signatories to it. It does not create rights for probationers or parolees. Notably, the title under which Congress approved the Compact–"An act granting the consent of Congress to any two or more states to enter into agreements or compacts for cooperative effort and mutual assistance in the prevention of crime and for other purposes"–supports our inference that Congress approved the Compact as a means of aiding the states in crime prevention, not as a vehicle to provide procedural rights for probationers and parolees.

> At the second point of inquiry, the Probation Compact regulates interactions among the states, delineating one state's rights and responsibilities to another . . . . [T]he Compact . . . focuses upon the State entities regulated by the standards, "rather than the individuals protected." Alexander v. Sandoval, 532 U.S. 275, 289 (2001). The Compact, we conclude, creates "no implication of an intent to confer rights on a particular class of persons." Id.
>
> Lastly, the Compact has no mechanism by which to enforce the alleged "rights" of probationers or parolees. The Compact mentions neither court adjudication nor administrative proceedings. These omissions further lead us to conclude that Congress did not intend to create an enforceable federal right for probationers or parolees under this Compact.
>
> We hold that [the plaintiff] does not have a private right of action under Section 1983 to enforce the provisions of the Interstate Compact because one cannot be inferred from its terms.

Id. at 104-05.

In the instant matter, plaintiff's claims are based on an alleged violation the Interstate Compact. The Third Circuit Court of Appeals, however, has held that the Interstate Compact does not confer an enforceable right on probationers and parolees, and section 1983 does not provide a remedy for the deprivation of a right that Congress failed to bestow. As such, no material issue of fact remains to be resolved and the defendant is entitled to judgment as a matter of law on plaintiff's section

1983 complaint regarding the Interstate Compact.[4]

## B. Due Process and Equal Protection

Plaintiff next contends that the defendant's denials of his requests to transfer parole supervision violated his Fourteenth Amendment Due Process and Equal Protection rights. Defendant asserts that plaintiff's constitutional claims fail as a matter of law. We will discuss the due process and equal protection claims in turn.

### 1. Due Process

Plaintiff argues that his request to transfer probation from Georgia to Pennsylvania implicates his fundamental right to travel–a fundamental right that the Fourteenth Amendment's Due Process Clause protects. The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. XIV. The substantive due process clause is a "component of the [Fourteenth Amendment] that protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" Collins v. City

---

[4] The court will deny this claim with prejudice as an amendment would be futile. See Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (holding that district courts must permit a curative amendment within a set period of time unless such an amendment would be inequitable or futile).

of Harker Heights, 503 U.S. 115, 125 (1992) (quoting Daniels v. Williams, 474 U.S. 327, 331 (1986)).  However, "[t]he history of substantive due process counsels caution and restraint[,]" and "[e]ach new claim to [substantive due process] protection must be considered against a background of Constitutional purposes, as they have been rationally perceived and historically developed."  Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 229 (1985) (Powell, J., concurring) (citations and internal quotations omitted).

To establish a substantive due process claim, "'a plaintiff must prove [1] the particular interest at issue is protected by the substantive due process clause and [2] the government's deprivation of that protected interest shocks the conscious.'"  Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 190 (3d Cir. 2009) (quoting Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008)).  When the challenged state action is non-legislative, such as the instant case based on the actions of a state's probation department, courts assessing whether the due process clause protects a particular interest "look, as a threshold matter, to whether the property interest being deprived is 'fundamental' under the Constitution."  Nicholas v. Pa. State Univ., 227 F.3d 133, 142 (3d Cir. 2000).  The Third Circuit Court of Appeals has explained that

"[f]undamental rights are rights that are 'deeply rooted in the Nation's history and traditions . . . [and] interests implicit in the concept of ordered liberty like personal choice in matters of marriage and family.'" Wrench Transp. Sys., Inc. v. Bradley, 340 F. App'x 812, 815 (3d Cir. 2009) (quoting Nicholas, 227 F.3d at 143).

In the instant case, the United States Supreme Court has recognized that individuals who have committed crimes do not have an unqualified right to interstate travel: "Despite the fundamental nature of this right [to interstate travel], there nonetheless are situations in which a State may prevent a citizen from leaving. Most obvious is the case in which a person has been convicted of a crime . . . ." Jones v. Helms, 452 U.S. 412, 419 (1981). The Court went on to hold that even if a person is not currently incarcerated for (or even charged with) a crime, that person's criminal conduct "necessarily qualified his right" to interstate travel. Id. at 420-21.

The Third Circuit Court of Appeals likewise has recognized that "conditions of probation include restrictions on a defendant's right to travel." United States v. Warren, 186 F.3d 358, 366 (3d Cir. 1999). Additionally, those courts of appeals that have directly address the right to interstate travel for individuals on probation or parole have all concluded

11

that the right is either limited or non-existent.  See Williams v. Wisconsin, 336 F.3d 576, 581 (7th Cir. 2003) (noting that "[l]ike prisoners, . . . parolees . . . have no right to control where they live in the United States; the right to travel is extinguished for the entire balance of their sentences."); Bagley v. Harvey, 718 F.2d 921, 924 (9th Cir. 1983) (stating that "an individual's constitutional right to travel, having been legally extinguished by a valid conviction followed by imprisonment, is not revived by the change in status from prisoner to parolee."); Berrigan v. Sigler, 499 F.2d 514, 522 (D.C. Cir. 1974) (holding that any rights parolees had to travel were necessarily limited because "those rights of necessity are conditioned by the situation in which their convictions placed them").

Here, Georgia imposed a special condition of supervision prohibiting plaintiff from residing within 1,000 feet of a church, school, child care facility or areas where minors congregate.  (Id. ¶¶ 40, 69; Doc. 40, Ex. J, Ga. Condition of Supervision at 5).  This special condition of supervision fails to impinge on plaintiff's right to travel for two reasons.  First, Georgia, through the exercise of its police power, has a right to impose special conditions of probation.  See United States v. Knights, 534 U.S. 112, 119 (2001) (noting that "[j]ust as other punishments for criminal convictions curtail an offender's freedoms, a court granting probation may impose

reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens."). Second, plaintiff, as a parolee, does not enjoy "the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions." Morrissey v. Brewer, 408 U.S. 471, 480 (1972). Accordingly, plaintiff's Fourteenth Amendment Due Process claims fails as a matter of law because Georgia's special condition of supervision does not infringe upon plaintiff's limited right to travel.

### 2. Equal Protection

Plaintiff also argues that the defendant's decision to impose Georgia's 1,000 foot special condition of supervision violates his Fourteenth Amendment Equal Protection rights. The United States Supreme Court has "explained that '[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curium) (quoting Sioux City Bridge Co. v. Dakota Cnty., 260 U.S. 441, 445 (1923)).

"To bring a successful claim under 42 U.S.C. § 1983 for denial of

13

equal protection, plaintiffs must prove the existence of purposeful discrimination." Andrews v. City of Phila., 895 F.2d 1469, 1478 (3d Cir. 1990) (citing Baston v. Kentucky, 476 U.S. 79, 93 (1986)).  Further, the plaintiff must allege that he "'receiv[ed] different treatment from that received by other individuals **similarly situated**.'" Id. (quoting Kuhar v. Greenburg–Salem Sch. Dist., 616 F.2d 676, 677 n.1 (3d Cir. 1980) (emphasis added)).

Plaintiff asserts that he is similarly situated to Pennsylvania offenders convicted of similar crimes.  He contends that defendant is applying different and more stringent residency restrictions from what the defendant imposes upon similarly situated in-state offenders.  Thus, the defendant subjects plaintiff to disparate treatment, in violation of the guarantees set forth in the Equal Protection Clause of the Fourteenth Amendment.  In short, plaintiff contends that Fourteenth Amendment Equal Protection requires Pennsylvania to ignore Georgia's 1,000 foot parole condition because Pennsylvania does not impose this condition on sex offenders convicted in Pennsylvania.  The court disagrees.

Plaintiff is not similarly situated to offenders convicted of similar crimes in Pennsylvania.  Plaintiff was arrested, charged and convicted in Georgia.  (Compl. ¶¶ 30-31, 35).  Georgia, not Pennsylvania, sentenced

plaintiff to ten (10) years in a Georgia penitentiary and twenty (20) years of probation. (Id. ¶ 35). Georgia ordered plaintiff to register as a sex offender. (Id.) Moreover, Georgia, not Pennsylvania, imposed a special condition of supervision prohibiting plaintiff from residing within 1,000 feet of a church, school, child care facility or areas where minors congregate. (Id. ¶¶ 40, 69; Doc. 40, Ex. J, Ga. Condition of Supervision at 5). Stated differently, plaintiff is not similarly situated to Pennsylvania offenders because Georgia, not Pennsylvania, imposed the special condition. See City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (stating that the Equal Protection Clause of the Fourteenth Amendment directs "that all persons **similarly situated** should be treated alike") (emphasis added).

Plaintiff asserts that the Third Circuit's decision in Doe v. Pennsylvania Board of Probation and Parole, 513 F.3d 95 (3d Cir. 2008), supports his contention that defendant violated his equal protection rights. In Doe, a Pennsylvania resident convicted of a sex offense in New Jersey requested to transfer his probation to Pennsylvania. 513 F.3d at 98-99. At the time of Doe's transfer request, a **Pennsylvania statute**, Megan's Law II, automatically required out-of-state sex offenders to community

notification if they transferred their supervision to Pennsylvania.[5]  Megan's Law II, however, only subjected Pennsylvania offenders to this requirement if they were designated as a "sexually violent predator" following a civil hearing.  Id. at 108-112.  The Third Circuit held that Pennsylvania's "denial of equivalent process to both in-state and out-of-state parolees [was] not rationally related to its security concerns" and, therefore, violated equal protection.  Id. at 108.

The instant case is distinguishable from Doe because plaintiff cannot identify any **Pennsylvania statute** that treats him differently.  Specifically, the defendant is not adding the 1,000 foot restriction as a condition of accepting plaintiff's probationary transfer request.  Rather, the defendant is enforcing Georgia's special condition of supervision.  Simply put, plaintiff conflates defendant's enforcement of Georgia's special parole condition with Pennsylvania applying its own law to out-of-state offenders–a law that plaintiff has failed to identify and likely does not exist.  In sum, plaintiff is not similarly situated to in-state offenders.  Moreover,

---

[5] Pennsylvania's "Megan's Law" has undergone three distinct enactments.  The Act was first passed in 1995.  The version of the law challenged in Doe was enacted in 2000 and is referred to as "Megan's Law II."  A final revision of the law took effect in January of 2005, ("Megan's Law III"), but was repealed by the Adam Walsh Act on December 20, 2012.  See PA. CONS. STAT. ANN. §§ 9791-9799.41.

plaintiff has failed to identify any Pennsylvania statute that treats him differently from other similarly situated persons.  Accordingly, plaintiff's Fourteenth Amendment Equal Protection claim fails as a matter of law.

**Conclusion**

For the above-stated reasons, the court will grant defendant's motion for judgment on the pleadings.  Plaintiff cannot bring section 1983 claims for alleged violations of the Interstate Compact.  Moreover, plaintiff's Fourteenth Amendment Due Process and Equal Protection claims fail as a matter of law.  An appropriate order follows.

**Date: 09/22/14**                 **s/ James M. Munley**
                                               **JUDGE JAMES M. MUNLEY**
                                               **United States District Court**